# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Catherine Florea Ortiz,<br><br>    Defendant. | CR-10-2522-TUC-DCB-DTF<br><br>**REPORT AND RECOMMENDATION** |

      Pending before the Court are Defendant's Motion to Dismiss Criminal Complaint Due to Loss of Evidence (Doc. 12) and Supplemental Motion to Dismiss (Doc. 27). The government responded in opposition to these motions (Doc. 32) and Defendant replied (Doc. 64). This matter came before Magistrate Judge Ferraro for a hearing and a report and recommendation as a result of a referral, pursuant to LRCrim 5.1. Defendant's motion was set for evidentiary hearing and evidence was heard on November 3, 2010. Defendant was present and represented by counsel. This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

      Defendant's motion seeks to dismiss the complaint because the government failed to preserve evidence material to the defense or, in the alternative, to exclude witness testimony at trial. The Magistrate Judge recommends that the District Court, after its independent review, DENY Defendant's Motion to Dismiss the Complaint.

## I. **FACTUAL FINDINGS**

On August 28, 2010, Border Patrol Agent Travis Johnson initiated a traffic stop of a vehicle driven by Defendant Catherine Florea Ortiz. In addition to Defendant, the vehicle was occupied by two passengers, Ezequiel Heras-Medina and Roberto Perez-Aguirre. Agent Johnson suspected that passengers Heras-Medina and Perez-Aguirre had entered the United States illegally and that Defendant was transporting illegal aliens for profit. Agent Johnson decided to remove all three occupants to the Ajo Border Patrol Station for questioning.

At the station, Agent Johnson began an interview process with Heras-Medina and Perez-Aguirre. Border Patrol Agent Juan Escobedo assisted with the interview process because he was a native Spanish speaker and better able to communicate with the passengers, both of whom were Spanish speakers. Following the interviews, Heras-Medina and Perez-Aguirre were retained as material witnesses for the government against Defendant.

During the interview process, each witness was individually interviewed on two separate occasions. Thus, there were four separate interviews. Agent Johnson testified that each witness was initially interviewed to determine whether the witness had relevant information that could be used against Defendant. These initial interviews were not recorded, which was his standard procedure. Agents Johnson and Escobedo then brought the witnesses back into the interview room to obtain a more focused account pertinent to Defendant's offense. The second interview of each witness was recorded on a digital video camera.

Agent Johnson prepared a Form I-831 in connection with the interview process, which contained a summary of the witnesses' statements. He testified that after both initial interviews were completed, he conferred with Agent Escobedo to determine an accurate account of each witness's statement. Based on his own memory and the information provided by Agent Escobedo, Agent Johnson summarized the initial interviews before conducting the second interviews. Following the second interviews, Agent Johnson again conferred with Agent Escobedo and supplemented the summary to include information from

- 2 -

1  the second interviews. Agent Johnson testified that he prepared the entire summary from
2  memory without the use of notes and showed the completed summary to the witnesses to
3  verify its accuracy before finalizing the form. He testified that the summary he prepared was
4  an accurate and true rendering of the witnesses' statements during the interview process. A
5  copy of Agent Johnson's summary of the interview process was made available to Defendant
6  prior to the recorded depositions of the material witnesses.

7  The digital video recording of the second interviews was saved as an electronic video
8  file on a DVD. During the process of making copies of the DVD, the disk was physically
9  damaged. Although initially concerned that the information on the disk had been lost, the
10 government was ultimately able to retrieve the information from the disk and make copies
11 of the video recording of the second interviews. A copy of the recorded second interviews
12 was made available to Defendant prior to the recorded depositions of the material witnesses.

## II. DISCUSSION

14 Defendant argues that the government withheld exculpatory and impeachment
15 evidence in violation of: (a) the Fifth Amendment, as defined in *Brady v. Maryland*, 373
16 U.S. 83 (1963); (b) 18 U.S.C. § 3500 (the *Jencks Act*); and (c) the Federal Rules of Criminal
17 Procedure 15, 16 and 26.2. The government responds that all evidence has been disclosed
18 and that no evidence has been destroyed or withheld.

19 **A. *Brady & Youngblood***

20 Defendant's motion and supplemental motion are premised on the government
21 suppressing a complete copy of the recorded interview process of both material witnesses.[1]
22 There is no factual dispute, after the evidentiary hearing, that there were two interviews of

---

[1] At the time Defendant filed her original motion, both parties believed the recorded statements had been lost due to physical damage to the disc. As confirmed through testimony at the evidentiary hearing, it turned out the disc could not be read or duplicated because it had not been "finalized" in the camera. After finalizing the disc, the government duplicated the recording without error and it was produced to Defendant.

- 3 -

1 each witness conducted and the I-831 Form contains the agent's summary of both of them.
2 Only one interview of each witness was recorded and the entirety of those recordings was
3 produced to Defendant. As reflected in Defendant's reply brief, in light of the facts as
4 established at the hearing, Defendant's remaining claim is that the government failed to
5 accurately record or summarize the initial witness interviews.[2]  (Doc. 64 at 2.)

6       In *Brady*, the Supreme Court held that the suppression of material evidence favorable
7 to the defendant violates the Due Process Clauses of the Fifth and Fourteenth Amendments
8 to the Constitution. 373 U.S. at 87. In order to prevail on a *Brady* claim, a defendant must
9 demonstrate that the evidence at issue was (1) favorable, because it was either exculpatory
10 or impeaching; (2) suppressed by the government, either willfully or inadvertently; and
11 (3) material, in that prejudice resulted from its suppression. *Strickler v. Greene*, 527 U.S.
12 263, 281-82 (1999); *see Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Kyles v. Whitley*, 514
13 U.S. 419, 433 (1995). Evidence is material for *Brady* purposes "if there is a reasonable
14 probability that, had the evidence been disclosed to the defense, the result of the proceeding
15 would have been different." *Kyles*, 514 U.S. at 433 (quoting *United States v. Bagley*, 473
16 U.S. 667, 682 (1985)); *see Banks*, 540 U.S. at 699; *Strickler*, 527 U.S. at 280.

17       First, there is no evidence the government suppressed any evidence. The government
18 turned over to Defendant all of the evidence it possessed from the witness interviews, the I-
19 831 Form and the recordings that were created of the second interviews. Defendant's
20 position amounts to an argument that the government had a constitutional obligation to
21 compile potential *Brady* material by recording the first witness interviews. This argument
22 was explicitly rejected in *United States v. Marashi*, 913 F.2d 724, 734 (9th Cir. 1990)
23 ("failure to record government interviews does not constitute *Brady* error.") (citing *United*

---

25     [2] Defendant also contends that the recorded interviews do not appear to be
26 complete. (Doc. 64 at 3.) Although the interviews are brief and do not contain a formal
end, there is no evidence the government possesses a more complete copy of the second
27 interviews.

- 4 -

*States v. Bernard*, 625 F.2d 854, 860 (9th Cir. 1980)).  Second, Defendant has failed to demonstrate the evidence at issue was favorable or material.  Although she has conducted depositions of both witnesses, her allegation that the evidence is material and exculpatory because it might be helpful is wholly conclusory, which is insufficient for a *Brady* claim. *United States v. Agurs*, 427 U.S. 97, 109-10 (1976) (the mere possibility that undisclosed information might have helped the defense is insufficient to establish materiality.)

Defendant also argues that the government destroyed evidence in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1989), and *California v. Trombetta*, 467 U.S. 479 (1984). However, "unless a criminal defendant can show bad faith on the part of the [government], failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58; *see Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (bad faith must be shown even when the destroyed evidence "could [have] eliminate[d] the defendant as the perpetrator.")  The exculpatory value of the evidence must be apparent prior to its destruction. *Trombetta*, 467 U.S. at 489.

The government did not destroy any evidence.  Although the initial interviews were not recorded, the agent's summary of the interviews was produced to Defendant. Additionally, there is no evidence of bad faith; rather, Agent Johnson followed his standard procedure not to record the initial witness interviews. *See Trombetta*, 467 U.S. at 488 (suggesting that following normal practice is in accord with good faith).  Finally, because Agent Johnson chose not to record the interviews in advance, he was not on notice that the witnesses would provide any evidence of exculpatory value to the defense.  To date, Defendant has failed to demonstrate that any evidence of exculpatory value was disclosed in the initial interviews and not produced to her.[3]

---

[3] In witness Perez-Aguirre's deposition, he indicated that Agent Johnson did not accurately record some information he gave during the interview process. Specifically, he suggested that he told the agent about "signals," which was not reflected in the report.  Further, he testified that he did not tell the agent that the guide directed him

- 5 -

In sum, because it produced all material evidence relating to the interviews of the material witnesses, the government has not violated its duty under *Brady* or *Youngblood*. Additionally, Defendant failed to establish the government acted in bad faith or that any evidence material and favorable to her was lost.

### B. 18 U.S.C. § 3500 (the *Jencks Act*)

Pursuant to the *Jencks Act*, after a witness has testified on behalf of the government, the government may be ordered to produce any statement of the witness in the possession of the government. 18 U.S.C. § 3500(b). Defendant claims the government violated the *Jencks Act* by suppressing impeachment and exculpatory evidence, presumably the statements made by the material witnesses during the interview process. However, the government produced both Agent Johnson's I-831 summary of the witnesses' statements and the DVD video recording of the second interviews. Nowhere in her motions does Defendant claim any other statements were taken or are in the possession of the government. Accordingly, the government has satisfied its duty under the *Jencks Act* by providing Defendant with all statements in its possession made by the material witnesses.

### C. Federal Rules of Criminal Procedure 15, 16 and 26.2

Defendant summarily claims the government violated Federal Rules of Criminal Procedure 15, 16 and 26.2 without explanation. Rule 15 relates to depositions and requires that the government provide the defendant, for use at the deposition, any statement of the deponent that the government possesses. Fed. R. Crim. P. 15(e)(3). Rule 16 sets forth the government's duties during discovery, which include providing a defendant access to documents in the government's possession relevant to the defense or intended for use in the government's case. Fed. R. Crim. P. 16(a)(1)(E). Rule 26.2 relates to producing a witness's statement. Presumably, Defendant is arguing the government should provide all statements

---

to the truck, but Agent Johnson wrote down contrary information. At the hearing, Agent Johnson disagreed with the witness's recollection. Defendant has not established this potential evidence is exculpatory or amounts to more than a disagreement in recall.

- 6 -

relating to the interview process.

The government already has produced copies of the video recording of the second interviews and Agent Johnson's I-831 summary. Agent Johnson testified that the initial interviews were never recorded and there is no evidence that any other material witness statements exist. Thus, all objects, documents, and witness statements in the government's possession relating to the interview process were produced. Accordingly, the government did not violate Federal Rules of Criminal Procedure 15, 16 or 26.2.

## III. RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY Defendant's Motion to Dismiss Criminal Complaint Due to Loss of Evidence and Supplemental Motion to Dismiss. (Docs. 12, 27.)

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CR-10-2522-TUC-DCB-DTF**.

DATED this 9th day of November, 2010.

D. Thomas Ferraro
United States Magistrate Judge